UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KARL AHLERS,

                            Plaintiff,

      v.                                                9:12-CV-0501 (GLS/ATB)

DR. RICHARD KASKIW, et al.,

                            Defendants.

---

APPEARANCES:

KARL AHLERS
61656-305
Plaintiff, pro se
CNY PC
P.O. Box 300
Marcy, NY 13403

GARY L. SHARPE
Chief United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff Karl Ahlers commenced this action by filing a pro se complaint, together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."), Dkt. No. 2 ("IFP Application"). By Decision and Order filed August 2, 2012, plaintiff's IFP application was granted, but following review of the complaint in accordance with 28 U.S.C. § 1915(e), the Court found that the complaint was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 5 (the "August Order"). In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. Plaintiff has now done so. Dkt. No. 6 ("Am. Compl.").

## II. DISCUSSION

### A. The Complaint

In the complaint, plaintiff alleged claims relating to his confinement at the Central New York Psychiatric Center ("CNYPC"). *See generally* Compl. Construed liberally, plaintiff alleged that defendants Kaskiw and Becker, who were the only two defendants named in the original complaint, (1) placed him on a restricted diet, without medical basis in violation of the Fourteenth Amendment; (2) denied him Equal Protection under the Fourteenth Amendment by denying him the same food provided to other residents of CNYPC; and (3) violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., by putting him on a restricted diet. *Id*.

After reviewing the complaint this Court determined that plaintiff failed to state (1) a substantive due process claim or Equal Protection claim under the Fourteenth Amendment with respect to his diet at CNYPC; or (2) a claim for violation of the ADA. August Order at 5-11. Therefore, plaintiff's claims were dismissed without prejudice, but in light of his pro se status, plaintiff was granted an opportunity to amend his complaint. *Id.* at 11-12.

### B. Review of the Amended Complaint

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §1915(e) was discussed at length in the August Order and it will not be restated in this Decision and Order. *See* August Order at 2-4.

The facts are alleged as set forth by plaintiff in his amended complaint. On July 7, 2011, plaintiff wrote to defendant Becker complaining that plaintiff had been denied ice cream for a snack on Memorial Day and the Fourth of July, while other residents received ice cream. Am. Compl. at 1; *see also* Dkt. No. 6-1 at 1-2. Defendant Becker told plaintiff that he

2

is designated as allergic to nuts, and the ice cream cones contain nuts. Dkt. No. 6-1 at 2. On January 23, 2012, plaintiff "exercised his rights to refuse treatment" by writing to defendant Becker "requesting that all dietary restrictions be removed from [his] records." Am. Compl. at 2. Defendant Becker did not reply to the letter. *Id*. at 3. Plaintiff wrote to defendant Becker on March 27, 2012, inquiring as to why he received a dry english muffin instead of the honeybun received by other residents. *Id*. Defendant Becker ignored the request. *Id*.

Plaintiff wrote to defendant Nowicki on August 9, 2011, and September 9, 2011, complaining that he is being treated for "non-diagnosed allergies." Am. Compl. at 1-2. Defendant Nowicki responded that plaintiff was provided a diet consistent with his "specific health needs." Dkt. No. 6-1 at 3. Plaintiff wrote to defendant Nowicki on February 8, 2011, again objecting to his dietary restrictions. Am. Compl. at 3. Defendant Nowicki responded that plaintiff's "allergy history was provided to CNYPC from [the New York State Department of Corrections and Community Supervision ("DOCCS")] upon his admission. Allergy testing is not medically indicated." Dkt. No. 6-1 at 16. Plaintiff wrote to defendant Nowicki on April 25, 2012, objecting "to being treated for undiagnosed allergies." Am. Compl. at 3-4. On May 14, 2012, defendant Nowicki, "without, upon information and belief, any medical training, denied allergy testing." *Id*. at 4. On June 1, 2012, plaintiff again objected to his diet; on June 20, 2012, defendant Nowicki told him he would not be tested for allergies, but did not address "the question of diet." *Id*. On June 22, 2012, plaintiff appealed defendant Nowicki's decision to defendant Bosco, who denied the appeal "with no medical training nor documentation (which does not exist)." *Id*. Plaintiff appealed defendant Bosco's decision to defendant Hogan. *Id.* Defendant Hall addressed the appeal on behalf of defendant Hogan

3

by denying the appeal. *Id*. Plaintiff filed another appeal to defendant Bosco from a decision made by defendant Nowicki; Bosco denied the appeal "without any medical background" claiming that "allergy testing would place [plaintiff's] health at risk." *Id*. at 4-5.

On November 10, 2011, December 14, 2011, and January 1, 2011, plaintiff wrote to defendant Kaskiw requesting that he be tested for allergies. Am. Compl. at 2. Defendant Kaskiw did not reply to any of the requests. *Id*. On January 23, 2012, plaintiff "exercise[d] his rights to refuse treatment" by writing to defendant Kaskiw "requesting that all dietary restrictions be removed from [his] records." *Id*. On March 26, 2012, plaintiff wrote to defendant Kaskiw "concerning pain that had developed", but defendant Kaskiw "ignored the request." *Id*. at 3. On July 13, 2012, and July 21, 2012, plaintiff asked defendant Kaskiw to reinstate plaintiff's prescription for Lidex cream, but Kaskiw did not reply to the request. *Id*. at 5. Plaintiff also wrote to defendant Kaskiw regarding prescriptions from an opthamologist which plaintiff never received, and about plaintiff's problem climbing stairs, but Kaskiw ignored the requests. *Id.* Plaintiff has been losing on average one pound per month since December 2010 because of "the diet that he has been forced to live on due to [his] imagionary [*sic*] allergies to 'nuts and Honey'" that are "claimed by Kaskiw and backed up by the other defendants." *Id*. at 5-6. Plaintiff "has never requested nuts, honey, or anything else be added to his diet . . . All that he has requested is meals containing the same ingredients and nutritional values as other patients have been receiving" and "[p]erhaps then he will stop losing weight." *Id*. at 6.

On February 8, 2012, plaintiff requested from the Medical Records Office at CNYPC copies of any allergy testing results in his medical chart, but plaintiff was informed that "no such records" were "in the record." Am. Compl. at 2. Plaintiff claims that the diet that he

4

receives "is so dissimilar [from the diet received by the other residents] as to exclude the possibility that defendants . . . acted on the basis of a mistake." *Id*. at 6. "Defendants singularly and in concert, under the color of state law" have deprived plaintiff of adequate food and medical care "as proved by [plaintiff's] unexplained loss of weight." *Id*. Plaintiff is "being treated differently from similarly situated individuals" because he has been placed on a diet with "undue restrictions" as compared to the diet enjoyed by other CNYPC residents, and defendants "have no rational basis for the difference in treatment." *Id*. at 7. Plaintiff claims that he has a disability for purposes of the ADA because he is "being regarded as having such an impairment" causing defendants to limit his diet, "ergo a denial of service, including the refusal to test for allergies." *Id*.

In light of plaintiff's pro se status, the Court has reviewed the amended complaint thoroughly and has read the allegations thereof liberally in the light most favorable to him. Construed in this light, the amended complaint alleges that defendants (1) have placed plaintiff on a restricted diet without medical basis, and denied him adequate medical care, in violation of the Fourteenth Amendment; (2) denied plaintiff Equal Protection under the Fourteenth Amendment by denying him the same food provided to other residents of CNYPC; (3) conspired to deny plaintiff his constitutional and/or statutory rights; and (4) violated his rights under the ADA by putting him on a restricted diet and denying him access to allergy tests. *Id*. For a complete statement of plaintiff's claims, reference is made to the entire amended complaint.

### 1. Claim That Plaintiff Was Denied An Adequate Diet and/or Medical Care in Violation of the Fourteenth Amendment

Individuals involuntarily committed to state custody have constitutionally-protected

liberty interests in adequate food, shelter, clothing, medical care and conditions of reasonable care and safety. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982); *see also Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir. 1996) (A person subject to involuntary civil commitment in a psychiatric facility retains a right to "'conditions of reasonable care and safety'" during his or her confinement); *Lane v. Carpinello*, No. 9:07-CV-0751 (GLS/DEP), 2009 WL 3074344, at *21-22 (N.D.N.Y. Sept. 24, 2009) (persons in non-punitive detention have a right to reasonable medical care).

"Courts have consistently held, in a variety of contexts, that the due process rights of persons in a nonpunitive detention are greater than the Eighth Amendment protections afforded to convicted prisoners." *Haitian Centers Council, Inc. v. Sale*, 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993) (citing cases); *Owens v. Colburn*, 860 F. Supp. 966, 974 (N.D.N.Y. 1994), aff'd 60 F.3d 812 (2d Cir. 1995) (citing cases). "Persons in nonpunitive detention have a right to 'reasonable medical care,' a standard demonstrably higher than the Eighth Amendment standard that protects prisoners: 'deliberate indifference to serious medical needs.'" *Owens*, 860 F. Supp. at 974 (quoting *Haitian Centers Council*, 823 F. Supp. at 1043-44). At a minimum, due process forbids conduct that is deliberately indifferent to one that is involuntarily committed.[1] *Haitian Centers Council*, 823 F. Supp. at 1044.

Generally, to rise to the level of a substantive due process violation, the conduct

---

[1] Under the deliberate indifference standard "[t]o sustain a claim for failure to provide an individual in custody with [reasonable] medical care, a plaintiff must prove deliberate indifference to serious medical needs. . . . An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to the person in custody's health or safety." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 722-23 (S.D.N.Y. 2006); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

6

complained of "must be so egregious or outrageous that it is conscience-shocking." *Beck v. Wilson*, 377 F.3d 884, 890 (8th Cir. 2004) (quotation omitted).  Simple negligence "is categorically beneath the threshold" of a substantive due process violation.  *Id*. (quotation omitted).  The Supreme Court has also recognized that the Constitution is not concerned with de minimis restrictions on individual liberty.  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).  Indeed, as the Second Circuit has acknowledged, some incidental restrictions relating to every day life are necessary in the context of the organized caretaking of institutional residents.  *Buthy v. Commissioner of Office of Mental Health*, 818 F.2d 1046, 1051 (2d Cir. 1987) (finding that requiring forensic unit patients to remain awake for a 16 hour period constitutes a diminimis imposition on individual liberty).

### a. Defendant Kaskiw

Plaintiff alleges that defendant Dr. Kaskiw ignored plaintiff's medical needs by failing to address his requests for medical treatment, including requests for prescriptions and his complaints regarding pain and shortness of breath; by keeping him on a restricted diet that was not medically justified, which resulted in plaintiff's substantial weight loss; and by refusing to have him tested for allergies.  At this early stage of the proceeding, the Court finds that a response from defendant Kaskiw to plaintiff's Fourteenth Amendment medical care claims against him is warranted.

### b. Defendant Hogan

The personal involvement of a defendant is a prerequisite for the assessment of liability in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of *respondeat superior* is inapplicable to these claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Johnson v.*

*Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). In the case of supervisory officials, personal involvement may be established in several ways: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). Thus, holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *Id*.

Here, plaintiff only alleges that he sent an appeal to defendant Hogan, which appeal was addressed by defendant Hall on Hogan's behalf. Am. Compl. at 4. Plaintiff has failed to allege facts to plausibly suggest that defendant Hogan was personally involved in the alleged wrongdoing. *See, e.g, Liner v. Goord,* 310 F. Supp. 2d 550, 555 (W.D.N.Y. 2004) ("Where a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action."); *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997) (no personal involvement where commissioner referred plaintiff's letter to the prison superintendent); *Farid v. Goord,* 200 F. Supp. 2d 220 (W.D.N.Y.2002) (dismissing action against DOCS commissioner and prison superintendent for lack of personal involvement where plaintiff merely sent petition to them and each referred the petition down the chain of command for investigation.).

8

Plaintiff's claim that defendant Hogan denied him adequate medical care or food in violation of the Fourteenth Amendment is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### c.  Defendants Becker, Hall, Bosco, and Nowicki

Plaintiff claims that he notified defendants Becker, Hall, Bosco, and Nowicki, that he wanted to be removed from the medically restricted diet, or to be tested for allergies, but they refused to honor his requests.  Construed liberally, plaintiff alleges that these defendants violated his right to receive adequate food or medical care in violation of the Fourteenth Amendment.  These claims against defendants Becker, Hall, Bosco, and Nowicki fail to state a claim for several reasons.

First, assuming that these defendants had any authority to alter plaintiff's diet, or to require allergy testing for plaintiff, plaintiff alleges at best a disagreement with medical treatment which does not rise to the level of a constitutional violation.  "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *Graham v. Gibson,* No. 04-CV-6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation.").  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of a

9

constitutional violation but are, at most, indicative of medical malpractice); *see also Kulak*, 88 F.3d at 77 ("The decisions of physicians regarding the care and safety of patients are entitled to a presumption of correctness." ) (citing *Youngberg*, 457 U.S. at 324).

Second, plaintiff's own submissions demonstrate that none of these defendants had the requisite mental state to sustain a Fourteenth Amendment substantive due process claim regarding his medical care or dietary needs; namely, there is nothing to plausibly suggest that any of these defendants acted unreasonably, or were deliberately indifferent to plaintiff's medical or dietary needs. Indeed, it appears that defendants Becker, Hall, Bosco, and Nowicki were merely following the instructions contained in plaintiff's medical records when they allegedly refused to remove plaintiff from the restricted diet or to provide allergy testing.[2] *See* Dkt. No. 6-1 at 16 (memorandum from defendant Nowicki advising plaintiff that his "allergy history was provided to CNYPC from DOCS upon [plaintiff's] admission. Allergy testing is not medically indicated."); *id*. at 24 (memorandum from defendant Nowicki to plaintiff stating that because plaintiff has "a long, documented history of allergies to nuts and honey. Allergy testing will not be offered."); *id*. at 26 (letter from defendant Bosco to plaintiff stating that plaintiff's "allergies were documented in his admission paperwork . . . therefore allergy testing will not occur."); *id*. at 2 (defendant Becker's progress note indicating that plaintiff did not receive an ice cream cone on two holidays because plaintiff "is allergic to nuts and the ice cream cone had nuts on it").

For all of the foregoing reasons, plaintiff's claim that defendants Becker, Hall, Bosco,

---

[2] The Supreme Court has emphasized that "decisions made by the appropriate professional are entitled to a presumption of correctness . . . to enable institutions of this type - often, unfortunately, overcrowded and understaffed - to continue to function." *Youngberg*, 457 U.S. at 324; *see also id.* at 323 n.30, 324-25 ("The administrators, and particularly professional personnel [i.e., persons competent by education, training or experience], should not be required to make each decision in the shadow of an action for damages.").

or Nowicki denied him adequate medical care or food in violation of the Fourteenth Amendment is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### 2. Equal Protection Claim

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (*quoting LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).

Construed liberally, plaintiff alleges that he was treated differently because of a disability or perceived disability, namely food allergies. Plaintiff does not state a cognizable claim under the Equal Protection Clause of the Fourteenth Amendment because, even assuming that he could show that a food allergy constitutes a disability, a "disability" is not a protected class under the Equal Protection Clause of the Fourteenth Amendment. *See O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *13 (E.D.N.Y. Sept. 5, 2012) (a disability and/or perceived disability are not suspect or quasi-suspect classifications); *Gallagher v. Town of Fairfield*, No. 3:10-cv-1270, 2011 WL 3563160, at *4 (D. Conn. Aug. 15, 2011) ("'[D]isability' is not a protected class under the Equal Protection

11

Clause of the Fourteenth Amendment."); *Kaiser v. Highland Cent. Sch. Dist.*, No. 1:08-CV-0436, 2008 WL 5157450, at *2 (N.D.N.Y. Dec.8, 2008) ("Disability and/or perceived disability are not suspect or quasi-suspect classifications."). Moreover, plaintiff has alleged no facts to suggest that defendants acted with malice, or in bad faith.

In the alternative, under a "class of one" theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir.2005). "'[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) *(quoting Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). "'Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" *Id*.

Here, plaintiff has not alleged the existence of any similarly situated individuals with a "high degree of similarity" to plaintiff. Plaintiff compares himself to "other patients" at CNYPC who are allowed to have meals off of "the posted menues [*sic*]." Am. Compl. at 6-7. This comparison category is too broad and does not demonstrate the level of specificity required by a class-of-one claim as it does not permit an inference that the members of this class are "so similar [to plaintiff] that no rational person could see them as different." *See Green v.*

12

*McLaughlin*, No. 11-5451-pr, 2012 WL 1592621, 2-3 (2d Cir. May 8, 2012) (affirming dismissal of inmate's class-of-one claim for failure to compare himself to inmates sufficiently similar).[3]

Plaintiff's Fourteenth Amendment Equal Protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### 3. Conspiracy Claim

A conspiracy claim under 42 U.S.C. 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta,* 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief); *see also Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action,

---

[3] In *Green*, plaintiff (who had been taken off of medical hold and transferred to another facility) described the inmates to which he compared himself as "other inmates at Green Haven with medical holds," and "other inmates with acute medical problems." The Second Circuit concluded that "[n]either of these broad categories is sufficient to demonstrate the level of specificity required by class-of-one claims as they do not permit an inference that the members of these classes are 'so similar [to Green] that no rational person could see them as different. . . . Most importantly, Green ha[d] not identified any other similarly situated inmates with diabetes whose medical holds were not rescinded and who were allowed to remain at Green Haven." *Green,* 2012 WL 1592621, at *3 (citing *Village of Willowbrook*, 528 U.S. at 564 (plaintiff must allege that he "has been intentionally treated differently from others similarly situated") (internal citation omitted).

13

the plaintiff "must provide some factual basis supporting a meeting of the minds"). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only a vague statement that "defendants singularly and in concert, under color of state law" denied plaintiff adequate food and medical care "as proved by [plaintiff's] unexplained weight loss." Am. Compl. at 6.  Plaintiff has not alleged that any meeting of the minds occurred between any of the defendants and the complaint contains no allegations whatsoever to support a "plausible" conspiracy claim involving any of the defendants.

Plaintiff's conspiracy claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### 4. ADA Claim

To state a claim under Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) . . . the defendants are subject to the ADA; and (3) . . . plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009) (internal quotation marks and alterations omitted).  CNYPC, operated by the New York State Office of Mental Health, is considered a public entity for the purposes of the ADA.  *See Lane*, 2009 WL 3074344, at *13.

Initially, the Court notes that it is well established that under the ADA, suits against

14

state officials or employees in their individual capacities are barred. *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (collecting cases). Accordingly, plaintiff's ADA claim is dismissed to the extent that it seeks recovery of damages against defendants in their individual capacities.

The crux of plaintiff's ADA claim is that the defendants have diagnosed him as having an allergy to nuts and honey, and have placed him on a restricted diet excluding products containing nuts and honey. Plaintiff alleges, however, that he does not have any allergies to nuts and honey, and wishes to be removed from the diet restricting his access to foods containing those products. Although plaintiff claims that he does not have food allergies, he nevertheless also claims that he still falls within the protections of the ADA because defendants have "regarded [him] as having such an impairment." Am. Compl. at 7.

In order to establish a claim under the ADA, the plaintiff must first show that he has a disability. *Farid v. Bouey*, 554 F. Supp. 2d 301, 326 (N.D.N.Y. 2008). Under Title II of the ADA, a disability is defined as a physical or mental impairment that substantially limits one or more of the plaintiff's major life activities. *Id.* (citing *inter alia Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002); *Doe v. Goord*, No. 04-CV-570, 2004 WL 2829876, at *17 (S.D.N.Y. Dec. 10, 2004); 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). *See also Teachout v. N.Y. City Dep't. of Ed.*, No. 04-CV-945, 2006 WL 452022, at *5 (S.D.N.Y. Feb. 22, 2006) ("The ADA defines as a disability 'being regarded as having such an impairment,' . . . that is, being regarded as having an impairment 'that substantially limits one or more of the major life activities'. . . ."). Therefore, whether plaintiff has a disability, or as he suggests is perceived as having a disability, plaintiff must identify the activity that he claims is impaired and establish that it constitutes a "major life activity." *Weixel*, 287 F.3d at

15

147.

The Second Circuit has found that "eating" is a major life activity. *See Forest City Daly Housing, Inc. v. Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999) (stating that "major life activities" include eating). However, "[u]nder the precedent within the Second Circuit, it is the nature of the ordinary limitations - not the severity of the consequences if a plaintiff fails to follow necessary treatment - that determines whether a limitation on a major life activity is substantial." *Krikelis v. Vassar College*, 581 F. Supp. 2d 476, 485-86 (S.D.N.Y. 2008) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 871 (2d Cir. 1998) ("We find that although [plaintiff's ailment] is a permanent affliction, the fact that it is asymptomatic for long periods, and varies in intensity, weighs against a finding of substantial limitation."); *Teachout*, 2006 WL 452022, at *5 ("[Plaintiff's] dietary restrictions, unaccompanied by any impairment to his ability to eat and digest food, simply do not rise to a substantial level." (internal quotation marks omitted)); *Shields v. Robinson-Van Vuren Assocs.*, No. 98-CV-8785, 2000 WL 565191, at *4-5 (S.D.N.Y. May 8, 2000) (finding that dietary modification required to control plaintiff's diabetes mellitus does not constitute a restriction on the activity of eating and noting that it is the nature of the limitation that is at issue); *accord Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999) (affirming summary judgment on basis that child with potentially life-threatening peanut allergy was not severely-limited in life activity, although consequences of failing to control food intake for nut contamination could include death)). Thus, plaintiff has failed to allege that his food allergies, or perceived food allergies, substantially limit a major life activity.

Plaintiff's ADA claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

**WHEREFORE,** it is hereby

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted: (1) plaintiff's claims that defendants Becker, Hogan, Hall, Bosco, and Nowicki placed plaintiff on a restricted diet without medical basis, and denied him adequate medical care, in violation of the Fourteenth Amendment; (2) plaintiff's Fourteenth Amendment Equal Protection claim; (3) plaintiff's conspiracy claim; and (4) plaintiff's ADA claim; and it is further

**ORDERED** that defendants Linda Becker, Michael Hogan, Donna Hall, Maureen Bosco, and Jeff Nowicki, are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of the amended complaint, to the United States Marshal for service upon defendant Richard Kaskiw. The Clerk shall forward a copy of the summons and amended complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to plaintiff's amended complaint be filed by defendant Kaskiw, or his counsel, with respect to the only surviving claim (that defendant Kaskiw denied plaintiff an adequate diet or medical care in violation of the Fourteenth Amendment) as provided for in the Federal Rules of Civil Procedure after service of process on the defendant; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper**

**sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

    **ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: April 19, 2013
    Syracuse, New York

_/s/ Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court