# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KARL AHLERS,

Plaintiff,

    v.                                       9:12-CV-501(GLS/ATB)

DR. RICHARD KASKIW,

Defendant.

KARL AHLERS, Plaintiff, *pro se*
C. HARRIS DAGUE, Ass't Att'y Gen., for the Defendant

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

Presently before the court is the defendant Kaskiw's motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. Nos. 17, 18), which plaintiff has opposed (Dkt. No. 20). This matter was referred to me for Report and Recommendation on January 31, 2014 by Chief U.S. District Judge Gary L. Sharpe, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff Karl Ahlers is a civilly-committed sex offender, confined at the Central New York Psychiatric Center ("CNYPC"), in the custody of the New York State Office of Mental Health ("OMH"). Liberally construed, the amended complaint ("AC," Dkt. No. 6) alleges that, between July 2011 and September 2012, Dr. Kaskiw denied plaintiff an adequate diet and appropriate medical care, in violation of the Due Process Clause of the Fourteenth Amendment.[1] For the reasons set forth below, this

---

[1] Chief Judge Sharpe's Decision and Order dated April 19, 2013, dismissed various other claims against five additional defendants who were named in the amended complaint. (Dkt. No. 8 at 17).

court recommends that defendant's summary judgment motion be granted, and that the remaining claim set forth in plaintiff's amended complaint be dismissed.

## FACTS

The amended complaint alleges that, based on an improper diagnosis that plaintiff suffered from a nut allergy, he was kept on a restricted diet at CNYPC, which deprived him of certain foods that were provided to other residents. (AC ¶¶ 2-9, 26-27, 46-48). Plaintiff's requests to be taken off the restrictive diet and to be scheduled for allergy testing, to determine whether he was allergic to nuts, were denied by Dr. Kaskiw and others. (AC ¶¶ 10-18, 21, 28-35, 38). The amended complaint states that, as a result of the restricted diet, plaintiff lost an average of one pound per month since December 2010. (AC ¶¶ 45, 48). Plaintiff also alleges that the medical staff refused to continue to prescribe Lidex cream to address a persistent itchy rash on plaintiff's legs and feet. (AC ¶¶ 39, 41 & Exs. 23, 25; Pl.'s Aff. ¶¶ 40-46, Dkt. No. 20 at 4).[2]

When plaintiff was transferred to CNYPC in May 2009, his prior medical records from other facilities contained numerous references to his nut allergies and the fact that his diet was not to include, *inter alia*, nuts and honey. (Kaskiw Aff. ¶¶ 17,

---

[2] The amended complaint also alleges that Dr. Kaskiw ignored (1) a complaint from plaintiff on March 26, 2012 "concerning pain that had developed" in his arms, legs, and abdomen (AC ¶¶ 24-25 & Ex. 15); (2) a request on July 13, 2012 concerning a prescription from an ophthalmologist which plaintiff never received (AC ¶ 40 & Ex. 24); and (3) a July 22, 2102 letter noting plaintiff's problems climbing multiple flights of stairs, and requesting an elevator pass (AC ¶ 42 & Ex. 26). Neither plaintiff's amended complaint, nor his motion papers, provide further information regarding any negative impact on plaintiff's health or well-being resulting from the alleged lack of response to these complaints; hence, they clearly do not support a constitutional claim for inadequate medical care based on the legal standards discussed below.

2

18, Dkt. No. 17-4; AG DEF-1-3, 11-12, Dkt. No. 18).[3] Based upon plaintiff's documented medical history, the CNYPC staff imposed an allergy-tailored diet plan that excluded foods to which plaintiff was allergic, including nuts and honey.[4] (Kaskiw Aff. ¶ 20, AG DEF-12, 13).

On or about November 7, 2011, plaintiff attended a medical appointment with Dr. Kaskiw, during which he objected to his allergy-tailored diet plan and requested to have the plan discontinued so that he could regulate his own diet. Dr. Kaskiw advised plaintiff that eliminating his dietary restrictions was not medically appropriate, would be in violation of facility policy, and would present a danger to plaintiff. Plaintiff also requested further allergy testing, which Dr. Kaskiw refused as medically unnecessary, given plaintiff's well-documented allergy history. (Kaskiw Aff. ¶ 21; AG DEF-15).

Plaintiff thereafter made repeated complaints to Dr. Kaskiw and other OMH officials, claiming that he had no food allergies, objecting to his restricted diet, and demanding allergy testing. (AC ¶¶ 12-23, 26-38). OMH consistently responded that a change in plaintiff's dietary restrictions and re-testing for allergies were not medically indicated given his history of nut allergies. (Kaskiw Aff. ¶¶ 22-23; AG DEF 31-38).

---

[3] For example, an August 8, 2007 Nursing Assessment from the Manhattan Psychiatric Center noted that plaintiff had allergies to honey, rice, and nuts, which resulted in abdominal discomfort and vomiting. (AG DEF-2).

[4] "Examples of products that might contain tree nuts include . . . [h]oney . . . ." USDA Food Allergy Fact Sheet, http://www.nfsmi.org/documentlibraryfiles/PDF/20130227020259.pdf. Plaintiff's medical records also indicate that he was allergic to bee stings, which may have influenced the exclusion of honey in his restricted diet. (AG DEF-12-13, 20).

On or about November 13, 2012, two months after plaintiff filed this lawsuit, he was given a Radioallergosorbent ("RAST") test by an outside allergy testing laboratory. The RAST test was positive for a "Class III" peanut allergy, indicating a "moderate to strong" food allergy. (Kaskiw Aff. ¶¶ 24-26; AG DEF-16-17). Based on the re-testing results, CNYPC continued plaintiff on a restrictive diet, excluding peanuts and peanut by-products. (AG DEF-28-30).

Medical records from the Manhattan Psychiatric Center indicated that, as of August 2007, plaintiff weighed 236 pounds, and that the nursing staff was tasked with educating him about the importance of better dietary choices. (AG DEF-7-8). Upon his transfer to CNYPC on May 28, 2009, plaintiff's height was 75.5 inches and his weight was 260 pounds, placing him in the "obese" category on the American Medical Association's Body Mass Index ("BMI") scale. (Kaskiw Aff. ¶¶ 34-35 & Ex. 2). Plaintiff's weight was gradually reduced to 216 pounds ("overweight" on the BMI scale) as of September 28, 2011; to 203 pounds (still "overweight") as of September 29, 2012; and to 194 pounds (a normal and healthy weight on the BMI scale) as of December 28, 2013. (Kaskiw Aff. ¶¶ 36-38 & Ex. 2). Dr. Kaskiw observed that plaintiff's "gradual and steady" weight loss over the course of four years "placed him in a vastly improved, medically desirable, healthy place." Dr. Kaskiw concluded that "there has been no need for treatment or medical intervention to curb or other[]wise address [plaintiff's] weight loss or dietary restrictions." (Kaskiw Aff. ¶ 39).

Dr. Kaskiw prescribed Lidex cream to plaintiff on January 9, 2012, based on his

complaints of dry, scaly skin on his ankles/feet. (Kaskiw Aff. ¶ 43; AG DEF 20-22).[5]

On July 30, 2012, CNYPC medical staff examined plaintiff, following his request for

Lidex cream, and found dry and itchy skin on his legs, with four to five scattered small

scabs. A nurse practitioner determined that a prescription for Lidex cream was not

indicated, and suggested that plaintiff use an over-the-counter skin moisturizer

available through the facility's commissary. (Kaskiw Aff. ¶ 44; AG DEF-23).

Plaintiff was examined again on August 21, 2012 and presented with a raised rash on

his arm and scabbed areas on his calves. A nurse practitioner advised plaintiff to try a

lower-potency steroid cream first, instead of Lidex. (Kaskiw Aff. ¶ 45; AG DEF-24-

25). Plaintiff was seen again on November 27, 2012, still complaining of dry, itchy

skin and a raised rash on his legs. Plaintiff was treated by a nurse practitioner with

Benadryl, Bacitracin and Lac-Hydrin. (Kaskiw Aff. ¶ 46; AG DEF-26-27).

## DISCUSSION

## I.    Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of

material fact and, based on the undisputed facts, the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263,

272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must

---

[5] Lidex cream is a topical steroid anti-inflammatory medication often prescribed to relieve
symptoms of eczema, such as itching or skin dryness. (Kasiw Aff. ¶ 42).

be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## II. Medical Care

### A. Applicable Law

In analyzing the contours of the constitutional standard applicable to medical care claims of civilly committed sex offenders, it is helpful to discuss first the standards applied by the courts when such claims are raised by convicted prisoners and pretrial detainees. In order to state a claim for cruel and unusual punishment under the Eighth Amendment, based on constitutionally inadequate medical treatment, a sentenced prisoner must allege "acts or omissions sufficiently harmful to evidence

6

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing, *inter alia*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Constitutional medical care claims by pretrial detainees must be analyzed under the Due Process Clause of the Fourteenth Amendment because the Eighth Amendment's cruel and unusual "punishment" clause is not directly applicable to prisoners who have not been convicted. *Mayo v. County of Albany*, 357 F. App'x 339, 341 (2d Cir. 2009). In 2009, the Second Circuit held that the Eighth Amendment "deliberate indifference" standard, as articulated in the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994)[6], should be applied to constitutional medical care claims of pretrial detainees under the Due Process clause. *Caiozzo v. Koreman*, 581 F.3d 63, 66, 72 (2d Cir. 2009) ("[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment"). *Caiozzo*, following the position taken by several other circuit courts, reversed prior Second Circuit precedent which had applied a strictly objective standard in evaluating medical claims by pretrial detainees

---

[6] Farmer included a subjective element in the Eighth Amendment standard for deliberate indifference, requiring evidence that the defendant "disregard[ed] a risk of harm of which he [was] aware." *Caiozzo*, 581 F.3d at 65 (quoting *Farmer*, 511 U.S. at 837).

under the Due Process clause.  *Mayo*,  357 F. App'x at 341; *Caiozzo v. Koreman*, 581 F.3d at 71 & n.4.[7]

Civilly committed sex offenders are neither convicted inmates, nor "pretrial detainees."  However, most of the judges in the Northern District of New York who have analyzed constitutional medical care claims by civilly committed sex offenders at CNYPC have relied upon *Caiozzo* in applying the same deliberate indifference standard applied by the Second Circuit to sentenced prisoners and pretrial detainees. *See, e.g.*, *James v. Morgan*,  9:13-CV-526 (DNH/CFH), 2014 WL 841344, at *2 (N.D.N.Y. March 4, 2014)[8]; *Ali v. Hogan*, No. 9:12-CV-0104 (DNH/RFT), 2013 WL 5466302, at *4 (N.D.N.Y. Sept. 30, 2013); *Smith v. Carey*, No. 9:10-CV-1247 (NAM/TWD), 2012 WL 6923338, at *7 (N.D.N.Y. Dec. 28, 2012) (Rep't- Rec.), *adopted*, 2013 WL 237722 (N.D.N.Y. Jan. 22, 2013); *Balkum v. Sawyer*, No. 6:06-CV-1467 (NPM), 2011 WL 5041206, at *11 (N.D.N.Y. Oct. 21, 2011); *Smith v. Hogan*, No. 9:09-CV-554 (GTS/GHL), 2011 WL 4343978, at *8 (N.D.N.Y. Aug. 1, 2011) (Rep't-Rec.), *adopted*, 2011 WL 4343809 (N.D.N.Y. Sept. 14, 2011).  Some of

---

[7] As the Second Circuit in *Caiozzo* elaborated:  "[D]espite the distinct constitutional sources of the rights of pretrial detainees and convicted inmates, state jail and prison officials owe the same duty to provide the same quantum of basic human needs and humane conditions of confinement to both groups. . . . That pretrial detainees may have more protections or rights in general . . . does not mean that they are entitled to greater protection of rights shared in common with convicted inmates.'"  581 F.3d at 71-72 (quoting *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc)).

[8] "Because plaintiff was civilly committed at the time of the incident, his medical care claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. . . . .  Despite this distinction, the same standard applies to Fourteenth Amendment medical care claims involving non-prisoners as to Eighth Amendment medical claims regarding prisoners."  *Id.* (citing, *inter alia*,  *Caiozzo*, 581 F.3d at 72).

8

our judges, however, have noted uncertainty as to whether a different standard for medical care claims of civilly committed persons should be applied, at least in the alternative, based on the Supreme Court's case in *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982) and its progeny. *See, e.g.*, *Groves v. New York*, No. 9:09-CV-412 (GLS/DEP), 2010 WL 1257858, at *6, *8 (N.D.N.Y. Mar. 1, 2010) (persons in nonpunitive detention have a right to "reasonable medical care," a standard demonstrably higher than the Eighth Amendment standard that protects prisoners–"deliberate indifference to serious medical needs") (citing *Haitian Ctrs. Council, Inc. v. Sale*, 823 F. Supp. 1028, 1043 (E.D.N.Y. 1993); *Owens v. Colburn*, 860 F. Supp. 966, 974 (N.D.N.Y.1994), *aff'd*, 60 F.3d 812 (2d Cir. 1995) (table)) (Rep't-Rec.), *adopted*, 2010 WL 1257942 (N.D.N.Y. Mar. 26, 2010) .

 *Youngberg* considered the legal standard that should be applied to assess the claim asserted on behalf of a "mentally retarded" individual, who was involuntarily committed to a state institution, and whose substantive due process rights to safe conditions of confinement, freedom from bodily restraint, and training or "habilitation" were allegedly violated. *Youngberg*, 457 U.S. at 309. The Supreme Court noted that "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id*. at 321-22. The *Youngberg* court held that the standard articulated by Chief Judge Seitz in the lower court opinion under review

  . . . affords the necessary guidance and reflects the proper balance between the

legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints. He would have held that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."

*Id.* at 321 (quoting *Romeo v. Youngberg*, 644 F.2d 147, 178 (3d Cir. 1980) (en banc) (Seitz, C.J., concurring).

It does not appear that the Supreme Court or the Second Circuit have explicitly ruled on whether *Youngberg* would require the application of a different standard for constitutional medical care claims for civilly committed persons than is now applied to sentenced prisoners and pretrial detainees.[9] There is disagreement among other courts on this question. *See, e.g., Battista v. Clarke*, 645 F.3d 449, 453 & n.4 (1st Cir. 2011) (the opinions as to whether a different, more plaintiff-friendly reasonable-professional-judgment standard applies to civilly committed individuals, based on

---

[9] In *Ahlers v. Rabinowitz*, 684 F.3d 53, 61 (2d Cir. 2012), the Second Circuit discussed *Youngberg* in assessing prior civil rights claims of the plaintiff in this action relating to the seizure of certain of his DVDs by officials at CNYPC:

> Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 321-22 . . . . However, the state's interest in maintaining order and security is not punitive in purpose or character, and remains valid in institutions of civil commitment." . . . The state also has an interest in treating the civilly committed individual. . . . The reasonableness of the seizure in this case depends on a balance of interests: the state's interests in order, security, and treatment, and Ahlers's property interest in his discs. . . . . In striking the appropriate balance, decisions made by the Defendants are entitled to a " 'presumption of correctness.'"

This panel decision indicates the Second Circuit may still adhere to the general proposition that civilly committed individuals are entitled to more considerate conditions of confinement than convicted prisoners. However, it does not shed much light on the appropriate standard to apply to medical care claims of a civilly committed sex offender following the decision in *Caiozzo* that the deliberate indifference standard applies to pretrial criminal detainees.

*Youngberg v. Romeo*, are "not uniform") (collecting cases).

This court is persuaded by the opinions in other circuits that *Youngberg*, when construed in light of subsequent Supreme Court cases, does not compel a different standard for medical care claims for civilly committed individuals and prisoners or pretrial detainees. *See, e.g., Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014) (because the Supreme Court later said that *Youngberg* "did not deal with decisions to administer or withhold medical treatment[]," *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 279-80 (1990), we apply the deliberate indifference standard from the Eighth Amendment to the medical care claims of a civilly committed plaintiff); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 646-47 (5th Cir. 1996) (although *Youngberg* announced a distinct standard to be applied in measuring the state's constitutional duties to mental incompetents, the Court's later decision in *DeShaney*, called into question the constitutional significance of the *Youngberg* decision)[10] (citing *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S.

---

[10] "*DeShaney* clarified that '[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.' 489 U.S. at 200 . . . . In other words, *DeShaney* suggests that a State's declared intent to confine incompetents for their own benefit, as opposed to its announced purpose to punish convicted criminals, should have no bearing on the nature of the constitutional duty owed to either group. . . . Since the State restrains the individual liberty of both mental incompetents and convicted inmates in a like manner, the State should incur the same duties to provide for the basic human needs of both groups." *Hare*, 74 F.3d at 647. In holding that the "deliberate indifference" standard applies to claims that a pretrial detainee was deprived of basic human needs, including medical care, the Fifth Circuit also noted that subsequent Supreme Court cases such as *Farmer*, which articulated the deliberate indifference standards for prisoners, "cast doubt on the vitality of *Youngberg*." *Id.* As noted above, the Second Circuit in *Caiozzo* relied on *Hare* and *Farmer* in deciding to apply the deliberate indifference standard to pretrial detainees asserting medical care claims.

189, 199-200 (1989)). *See also Serna v. Goodno*, 567 F.3d 944, 949 (8th Cir. 2009)

(applying the Fourth Amendment standard applicable to a pretrial detainee to a civil

detainee, based on an analogy drawn by the *Youngberg*, 457 U.S. at 320-21, between

pretrial detainees and civilly committed persons, as two groups that could be subjected

to liberty restrictions "reasonably related to legitimate government objectives and not

tantamount to punishment").[11] However, like the Fifth Circuit in *Hare*, 74 F.3d at

647, I need not resolve whether the professional-judgment standard suggested by

*Youngberg* has continuing vitality in the context of medical care claims, because, as

discussed below, the standard is not substantially different from "deliberate

indifference," and both would produce the same outcome on the facts of this case.

### 1.    Deliberate Indifference

The objective prong of the deliberate indifference standard is satisfied "when

(a) the prisoner was 'actually deprived of adequate medical care,' meaning prison

officials acted unreasonably in response to an inmate health risk under the

circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'

*Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). If the "unreasonable

care" consists of a failure to provide any treatment, then the court examines whether

the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter*, 316 F.3d

178, 185-86 (2d Cir. 2003). When a prisoner alleges "a temporary delay or

---

[11] "The similarity in the grounds for detaining persons awaiting trial and persons
determined to be sexually dangerous supports application of the analogy to pretrial detainees . . .
." *Serna v. Goodno*, 567 F.3d at 948.

interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 F. App'x at 236 (citing, *inter alia*, *Chance v. Armstrong*, 143 F.3d at 702).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan*, 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord*,

13

467 F.3d at 281.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (table).

### 2.     Professional Judgment

Chief Judge Seitz's concurring opinion in the Third Circuit elaborated on the professional-judgment standard adopted, on review, by the Supreme Court in *Youngberg*:

> [T]he defendants are liable if their conduct was such a substantial departure from accepted professional judgment, practice, or standards in the care and treatment of this plaintiff as to demonstrate that the defendants did not base their conduct on a professional judgment. . . . By "accepted professional judgment" I do not mean some standard employed by a reasonable expert or a majority of experts in the community, as state malpractice actions would require, but rather that the choice in question was not a sham or otherwise illegitimate. . . . The 'substantial departure from accepted professional judgment' standard effectively distinguishes between conduct that violates the minimum requirements of the Constitution and conduct, such as ordinary

malpractice, that does not.

*Romeo v. Youngberg*, 316 F.3d at 178. I agree with the judges who have parsed this standard and have concluded that it is not "all that far apart" from the deliberate indifference standard articulated in *Farmer*. See, e.g., *Battista v. Clarke*, 645 F.3d at 453 ("[b]oth the *Farmer* and *Youngberg* tests leave ample room for professional judgment, constraints presented by the institutional setting, and the need to give latitude to administrators who have to make difficult trade-offs as to risks and resources"). *See also Groves v. New York*, 2010 WL 1257858, at *6 (concluding that "[a]t a minimum, due process forbids conduct that is deliberately indifferent to one that is involuntarily committed" and focusing on the "deliberate indifference" standard in reviewing the medical care claim of the civilly-committed CNYPC sex offender).

I would respectfully disagree with the 1993 Eastern District of New York opinion in *Haitian Ctrs. Council, Inc. v. Sale*, 823 F. Supp. at 1043, and other cases to the extent they suggest that *Youngberg* imposed a "reasonable medical care" standard for civil detainees that is "demonstrably higher" than the Eighth Amendment deliberate indifference standard.[12] Such a "reasonable medical care" "is easily confused" with a negligence or medical malpractice standard that was clearly not intended by the Court in *Youngberg*. *Hare v. City of Corinth, Miss.*, 74 F.3d at 646.

---

[12] *Bost v. Bockelmann*, No. 9:04-CV-246 (GLS/DEP), 2007 WL 527320, at *1 (N.D.N.Y. Feb. 20, 2007) distinguished *Haitian Centers* because it dealt with immigration issues and was "wholly outside the context of prisoner litigation." *Owens v. Colburn*, 860 F. Supp. at 974, a 1994 Northern District of New York case which applied the "reasonable medical care" standard to pretrial detainees, was clearly overruled by the Second Circuit's 2009 opinion in *Caiozzo*, which held that the "deliberate indifference" standard should apply in that context.

## B.    Analysis

Pursuant to the legal analysis above, this court will evaluate plaintiff's complaints about his medical care primarily under the "deliberate indifference" standard applicable both to prisoners under the Eighth Amendment and to persons in non-punitive detention under the Due Process Clause.  However, in the alternative, I will also assess how plaintiff's claims would fare under the "professional judgment" standard, to the extent that applies to civilly committed individuals.

### 1.    Restrictive Diet/Weight Loss

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health . . . .  While prison officials are duty bound to provide inmates with nutritionally adequate food, 'absent religious or medical[ly] peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated[.]'"  *Bost v. Bockelmann*, No. 9:04-CV-246 (GLS/DEP), 2007 WL 527320, at *10 (N.D.N.Y. Feb. 20, 2007) (citations omitted).  Prison officials have the discretion to control a prisoner's diet within these constitutional constraints, and "'[p]reference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu.'"  *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 24, 2012) (quoting *Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001)).  To establish a deliberate indifference claim with respect to a medically prescribed diet, "'one must establish that there was a sufficiently serious condition that resulted from the food not being received.'"  *Gaines v. Armor Health Care, Inc.*, No. 12-CV-4666, 2012 WL 5438931, at *5 (E.D.N.Y.

16

Nov. 2, 2012) (citing, *inter alia*, *Evans v. Albany County Correctional Facility*, No. 9:05-CV-1400 (GTS/DEP), 2009 WL 1401645, at * 9 (N.D.N.Y. May 14, 2009)).

As discussed above, plaintiff Ahlers was placed on a restricted diet based on nut allergies that were clearly documented in his medical records and that were eventually confirmed by independent laboratory testing, albeit after plaintiff filed this action. The only medical consequence of the restricted diet imposed on plaintiff was that, over the course of more than four years, he gradually lost 66 pounds, going from a body weight that was classified as "obese" on the BMI scale, to a normal and healthy weight of 194 pounds. While "rapid weight loss or weight loss coupled with other conditions may present a serious medical condition[,]"[13] plaintiff's gradual transformation from obesity to a healthy body weight clearly does not satisfy the objective prong of the deliberate indifference standard. *See, e.g.*, *Evans v. Albany County Correctional Facility*, 2009 WL 1401645, at * 10 (even assuming that plaintiff lost 30 pounds and experienced dizziness and headaches over a four-month period the court concludes that there is no evidence in the record from which a reasonable fact finder could conclude that plaintiff's "'weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation'") (citing *Bost v. Bockelmann*, 2007 WL 527320, at *8).

The defendant and the OMH staff did not violate plaintiff's constitutional rights

---

[13] *See, e.g., Anderson v. Kooi*, No. 9:07-CV-1257 (DNH/GHL), 2011 WL 1315721, at *12 (N.D.N.Y. Jan. 24, 2011) (citing *Kaminsky v. Rosenblum*, 929 F.2d 922, 924, 926-27 (2d Cir. 1991) (high blood pressure, diabetes, angina, gout and an enlarged spleen held to be serious medical needs, particularly in light of prisoner's extreme weight loss)) (Rep't Rec.), *adopted*, 2011 WL 1256942 (N.D.N.Y. Apr. 1, 2011).

by imposing a diet on plaintiff that was contrary to his medical needs. Rather, they restricted plaintiff's diet in a manner that was reasonably consistent with his documented food allergies. As noted above, Dr. Kaskiw made a medical judgment that the restricted diet was medically necessary and that the resulting weight loss greatly improved plaintiff's overall health. Plaintiff's disagreement with Dr. Kaskiw's treatment decisions, even if it had some factual support (which it does not), clearly is not sufficient to create an issue of fact about whether plaintiff could establish the subjective element of the deliberate indifference standard. *See, e.g.*, *Bost v. Bockelmann*, 2007 WL 527320, at *10 ("[to the extent that plaintiff complains about having been prescribed a high protein diet, as distinct from the high calorie intake diet which he sought in order to secure extra portions of food, the claim fails to rise to a level of constitutional significance, instead merely representing the sort of disagreement with a prescribed course of treatment that does not establish a defendant's deliberate indifference"). Even if there were occasional issues as to how plaintiff's restricted diet was implemented by food services workers at CNYPC (who are not, in any event, defendants in this action), such arguably negligent oversight of plaintiff's food choices would not constitute deliberate indifference. *See, e.g., Evans v. Albany County Correctional Facility*, 2009 WL 1401645, at * 11 (the evidence is lacking that any prison medical personnel or food service providers were cognizant of a serious medical need on the part of the plaintiff and aware that their failure to be faithful in providing the prescribed diet would result in a substantial risk of serious harm); *Gaines v. Armor Health Care, Inc.*, 2012 WL 5438931, at *5-6.

18

Moreover, no reasonable fact finder could conclude that Dr. Kaskiw's medical care of plaintiff reflected such a "substantial departure from accepted professional judgment" as to make his treatment choices "a sham or otherwise illegitimate."[14] Hence, even if the "professional judgment" standard suggested by *Youngberg* applied to plaintiff's medical claims, defendant is still entitled to summary judgment.

### 2.    Lidex Cream

No rational fact finder could conclude, on the record in this case, that plaintiff's complaints about the treatment of his skin rash and eczema at CNYPC met either the objective or subjective prongs of the deliberate indifference test.[15]  Plaintiff's skin

---

[14] This is part of Chief Judge Seitz's formulation of the "professional judgment" standard that was adopted by reference by the Supreme Court in *Youngberg*.  *Romeo v. Youngberg*, 316 F.3d at 178; *Youngberg v. Romeo*, 457 U.S. at 321.

[15] Plaintiff's response to defendant Kaskiw's summary judgment motion suggests that he may dispute that his skin condition was treated at various times, albeit with medications other than those he requested.  (Pl.'s Aff. ¶¶ 40-46, Dkt. No. 20 at 4 ("it took almost one full year to treat my itchy rash on both legs and feet!")).  Given the affidavits submitted by defendant Kaskiw and the supporting medical records, plaintiff's unsupported suggestion that he may have not received the documented treatment for his skin condition does not create an issue of fact that would defeat the summary judgment motion.  *See, e.g., Benitez v. Pecenco*, No. 92 Civ. 7670, 1995 WL 444352 at *7  n.5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")); *Brown v. White*, 9:08-CV-200, 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record).  *See also Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account." (citation omitted)).

condition is clearly not a sufficiently serious medical condition to meet the objective element of this standard. *See, e.g., Melendez v. Costello*, No. 6:12-CV-6226, 2013 WL 5937052, at *7 (W.D.N.Y. Nov. 1, 2013) ("[p]laintiff cannot establish the 'serious medical need' component of a deliberate indifference claim based on his eczema" (citing *Sledge v. Kooi*, 564 F.3d 105, 107, 108 (2d Cir. 2009) ("Sledge failed to produce sufficient evidence that any one of the conditions complained of [i.e., eczema, back pain, stomach disorders, allergies, and asthma] qualified as a 'serious medical need.'")); *Samuels v. Jackson*, 97-CV-2420, 1999 WL 92617, at *1-3 (S.D.N.Y. Feb. 22, 1999) (prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment). Nor, based on the authority cited above, is plaintiff's disagreement with his medical care providers about the appropriate medication for his skin condition sufficient to create a factual issue as to whether they harbored subjective deliberate indifference to his serious medical needs.[16] To the extent that the "professional judgment" standard suggested by *Youngberg* applies to

---

[16] As discussed in the factual summary above, the nurse practitioners who denied plaintiff the Lidex cream originally prescribed by Dr. Kaskiw, are not named defendants in this case. Although Dr. Kaskiw may have supervised the nurse practitioners at CNYPC, it does not appear that he was personally involved in denying Lidex cream to plaintiff, which would provide further support for granting defendant Kaskiw's motion for summary judgment with respect to this aspect of plaintiff's medical care claim. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Plaintiff alleged that Dr. Kaskiw ignored two letters that plaintiff wrote requesting treatment with Lidex cream. (AC ¶¶ 39, 41). It is well-settled that the failure of a supervisory official to respond to a letter of complaint written by an inmate is not sufficient to show personal involvement. *See, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y.2002) (collecting cases); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006).

plaintiff's medical care claim, the treatment of plaintiff's skin condition with more conservative medications than the one he preferred certainly does not constitute a "substantial departure from accepted professional judgment."

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Kaskiw's motion for summary judgment (Dkt. Nos. 17, 18) be **GRANTED** on the grounds stated herein, and that the remaining claims in plaintiff's amended complaint be **DISMISSED** in their entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**Dated:  July 9, 2014**

Hon. Andrew T. Baxter
U.S. Magistrate Judge